UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN HORNING,

    Plaintiff,

v.                                                                Case No.:  8:22-cv-1817-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Karen Horning seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a Rely Brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

Plaintiff applied for a period of disability and disability insurance on May 10, 2020, alleging disability beginning on February 15, 2019. (Tr. 102, 278-79). The applications were denied initially and on reconsideration. (Tr. 102, 125). Plaintiff requested a hearing, and on December 10, 2021, a hearing was held before Administrative Law Judge Robert Ballieu ("ALJ"). (Tr. 33-61). On February 17, 2022, the ALJ entered a decision finding Plaintiff not under a disability from February 15, 2019, the alleged onset date, through December 31, 2021, the date last insured. (Tr. 15-27).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on June 10, 2022. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on August 9, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 8).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of February 15, 2019, through her date last insured of December 31, 2021. (Tr. 17). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "major

depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, attention deficit-hyperactivity disorder, and an eating disorder." (Tr. 17). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She must avoid concentrated exposure to extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation. The claimant is able to understand, remember and apply simple instructions, interact appropriately with supervisors, but only occasionally with coworkers, and not the general public, concentrate, persist and maintain pace for 2 hours at a time and manage herself and adapt to gradual changes in the workplace. The claimant is limited to jobs that do not require production rate or pace work.

(Tr. 20).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as an administrative clerk and school secretary. (Tr. 26). At step five, the ALJ found that through the date last insured and considering Plaintiff's age (53 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the

national economy that Plaintiff could have performed. (Tr. 26-27). Specifically, the vocational expert testified that that a person with Plaintiff's limitations could perform such occupations as:

(1) marker, DOT 209.587-034,[1] light, SPV 2

(2) counter supply worker, DOT 319.687-010, medium, SPV 2

(3) document preparer, DOT 249.587-018, sedentary, SPV 2

(Tr. 27). The ALJ concluded that Plaintiff had not been under a disability from February 15, 2019, the alleged onset date, through December 31, 2021, the date last insured. (Tr. 27).

## II.     Analysis

On appeal, Plaintiff raises two issues. (1) whether the ALJ failed to resolve conflicts between the vocational witness's testimony and the DOT; and (2) whether the RFC is ambiguous as it relates to coworkers. (Doc. 20, p. 4, 9).

### A.     Conflicts Between the Vocation Expert's Testimony and the DOT

Plaintiff argues that there is an apparent conflict between Plaintiff's RFC and the occupation of document preparer. (Doc. 20, p. 5). At step five of the sequential evaluation, the ALJ found Plaintiff capable of performing the jobs of marker, counter supply worker, and document preparer. (Tr. 27). According to the DOT, one of these jobs – document preparer – requires a reasoning level of three. *See* 249.587-018

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

Document Preparer DICOT 249.587-018, 1991 WL 6723. Plaintiff argues that a reasoning level of three is an apparent conflict with an RFC limitation of being able to understand, remember, and apply simple instructions. (Doc. 20, p. 5). Plaintiff claims that the ALJ did not address this conflict. (Doc. 20, p. 7, 8).

The Commissioner confirms that the document preparer position requires a reasoning level of three, but does not concede that a reasoning level of three is an apparent conflict with Plaintiff's ability to understand, remember, and apply simple instructions. (Doc. 23, p. 7). Even so, the Commissioner contends that even if the document preparer job is eliminated, two remaining jobs of marker and counter supply worker leave 164,000 of the 182,000 identified jobs remaining, or around 90% of the jobs remain viable. (Doc. 23, p. 7).

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

In *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021), the Eleventh Circuit evaluated whether reasoning level three is consistent with a limitation to simple routine tasks. The Court held that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning. *Id.* at 1317. The Court added that "[t]his does not mean that there is an actual conflict or that an ALJ is categorically prohibited from including a job with level 3 reasoning in the step five analysis for a claimant with such a limitation. It does mean that the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination." *Id.*

Here, the RFC contained a limitation to being able to understand, remember, and apply simple instructions, but the ALJ failed to address this apparent conflict with the job of document preparer, which requires level 3 reasoning. Thus, the ALJ erred in listing this job without identifying and resolving the apparent conflict. But the ALJ's failure to address the apparent conflict does not end the matter. *Id.* A court must consider – as the Commissioner urges – whether the error was harmless. *Id.*

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer.

*Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

The issue here is whether the remaining two jobs exist in significant numbers in the national economy. In *Viverette*, the vocational expert testified that there were 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally. 13 F.4th at 1318. The ALJ referenced the jobs collectively and treated the three occupations (one of which was off the table) cumulatively to determine whether jobs existed in significant numbers in the national economy. *Id.* "In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant

number, absent the document preparer jobs." *Id.* And the Court clarified that this finding "'is a question of fact to be determined by a judicial officer [i.e., the ALJ].'" *Id.* (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) and *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005)). The Court found:

> Here, the ALJ based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an apparent conflict that affected 104,000 of those jobs. Given that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy. Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.

*Id.* (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)).

Here, the ALJ similarly referenced the vocational expert's testimony collectively concerning the number of jobs available in the national economy. (Tr. 27). The ALJ referenced the vocational expert's testimony that the marker has 127,000 jobs national, the counter supply worker has 37,000 jobs national, and the document preparer has 18,000 jobs nationally. (Tr. 27). The ALJ concluded, "[b]ased on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 27). The ALJ did not, however, find the number of marker

or counter supply worker jobs, taken singly or in combination, existed in significant numbers in the national economy. (Tr. 27); *see Viverette*, 13 F.4th at 1318. While only 10% of the jobs would be eliminated, this still amounts to 18,000 jobs in the national economy. As in *Viverette*, the Court hesitates to make any factual determination about whether a significant number of jobs exists in the national economy if the document preparer position is eliminated from these numbers.

Thus, as in *Viverette*, the Court cannot substitute its judgment for that of the ALJ to determine whether without the document preparer job, the other jobs existed in significant numbers in the national economy sufficient to support a finding of not disabled. Remand is warranted on this issue.[2]

## B. Wording of the RFC

Plaintiff contends that the wording in the RFC is ambiguous as it relates to interacting with supervisors, coworkers, and the general public. (Doc. 23, p. 11). Rather than deciding this issue, because this action is remanded on other grounds, on remand, the Commissioner is directed to reconsider the language in the RFC

---

[2] At the close of the *Viverette* opinion, the Court found that even if the ALJ had made specific findings on the number of remaining jobs in the national economy, there was an issue with the number of jobs in the remaining two occupations. *Viverette*, 13 F.4th at 1319. When the vocational expert testified about the number of jobs in a certain Standard Occupational Classification ("SOC") code, she did not know the level of reasoning for the other DOT occupations within the SOC code. *Id.* While this issue is not present here, the language of the decision demonstrates that the potential overstatement of the number of jobs was a separate basis to remand the case and therefore does not render the instant case distinguishable. *Id.* at 1318-19.

concerning interacting with supervisors, coworkers, and the general public.

## III. Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the step five findings and reconsider the language in the RFC relating to interacting with supervisors, coworkers, and the general public. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on August 22, 2023.

*[Signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties